Filed 12/31/14  P. v. Gomez CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID ANTHONY GOMEZ,<br><br>    Defendant and Appellant.<br>───────────────<br>In re DAVID ANTHONY GOMEZ,<br><br>    On Habeas Corpus. | A140565, A141148<br><br>(Lake County Super. Ct.<br>Nos. CR929581, CR933326) |


Defendant David Anthony Gomez appeals the five-year eight-month prison sentence imposed after he entered no contest pleas in two separate actions. He contends the trial court wrongly changed the structure of the sentence to which he agreed, sentencing him to state prison rather than to county jail, and committed errors in the manner in which it imposed certain fees and penalties. Defendant has also filed a petition for a writ of habeas corpus (A141148) alleging ineffective assistance of counsel in connection with the sentencing. Other than the need to correct an error in the abstract of judgment, we find no merit in his contentions. Therefore, we shall affirm the judgment and deny the petition that was consolidated with the appeal.

**BACKGROUND**

On October 1, 2012, pursuant to a duly executed plea form executed in case No. CR929581, defendant pleaded no contest to inflicting corporal injury on his spouse (Pen. Code, § 273.5, subd. (a); count 1) and admitted two prior prison term allegations (*id*., § 667.5, subd. (b)). All other counts and allegations were dismissed with a *Harvey*

1

waiver.[1] Pursuant to the negotiated plea, the court suspended imposition of sentence and placed defendant on probation for three years.

On September 10, 2013, in case No. CR933326, defendant was charged with possession of methamphetamine for purposes of sale (Health & Saf. Code, § 11378; count 1); transportation of methamphetamine (*id*., § 11379, subd. (a); count 2); transportation of morphine (*id*., § 11352, subd. (a); count 3); possession of morphine (*id*., § 11350, subd. (a); count 4); transportation of hydromorphone (*id*., § 11352, subd. (a); count 5); possession of hydromorphone (*id*., § 11350, subd. (a); count 6); possession of nunchaku (Pen. Code, § 22010; count 7); and possession of diazepam without a prescription (Health & Saf. Code, § 11375, subd. (b)(2); count 8). The complaint also alleged defendant had suffered six prior prison terms pursuant to Penal Code section 667.5, subdivision (b).[2] These allegations were also the basis for charging defendant with violation of the terms of his probation in the corporal injury case. On September 30, 2013, defendant pleaded no contest to counts 1 and 7, and admitted the violation of probation. The remaining counts were dismissed as part of the plea agreement.

Prior to entry of defendant's plea on September 30, 2013, the prosecutor stated the principal term was to be three years in case No. CR933326 (the drug case), and the subordinate term of two years eight months in case No. CR929581 (the corporal injury case). When the court asked to confirm the total sentence was "five years eight months in state prison," defense counsel responded, "[t]his is local." The court then stated, "County jail. Okay. You understand that agreement, sir? [¶] . . . [¶] You're going to be sentenced to five years and eight months in county jail?" To both questions, defendant responded, "Yes, sir."[3] The plea form, signed by defendant, indicates that the negotiated plea was for three years in "local jail" for the drug case and two years eight months in "local jail" for

---

[1] *People v. Harvey* (1979) 25 Cal.3d 754, 758.

[2] All further statutory references are to the Penal Code unless otherwise noted.

[3] It does not appear the trial court advised defendant he could withdraw his plea if the court withdrew its approval of the plea before sentencing. (See § 1192.5.)

violation of probation in the corporal injury case—a total of five years eight months "local jail."

At the sentencing hearing on October 28, 2013, the prosecutor explained to the court that it was necessary to do "a little rearranging as to the principal term and subordinate term" and to make the sentence on the corporal injury case the principal term. By imposing the midterm of three years on the corporal injury offense, enhanced by two years for the two admitted prior prison terms, plus concurrent eight-month sentences on counts 1 and 7 of the subordinate drug case, the prosecutor explained that the agreed upon five-year eight-month term would be maintained.

The following discussion ensued regarding whether the plea had been to a county jail term:

"THE COURT: I have a question. It reads as though this was an agreed to county jail.

"[PROSECUTION]: And I think that was simply something that might have been placed on the plea form by [defense counsel]. I did not agree to county jail that I can recall. I don't intend to do that. And in particular, whereas here we have a 273.5, so I don't know why I would have.

"THE COURT: Well, it's a prison eligible case because of the charge.

"[DEFENSE COUNSEL]: We do understand that. And I don't know how I came up—even on all my notes say local jail and we didn't even talk about local jail. My client is of the understanding and in agreement with the state prison case as long as you follow the 5.8.

"THE COURT: Okay. That will result to him being probably on PRCS [(postrelease community supervision)[4]] when he is released from state prison; you understand?

"THE DEFENDANT: Yes, sir.

"THE COURT: So with those understandings, are we ready to proceed?

---

[4]  See the Postrelease Community Supervision Act of 2011 (§ 3450 et seq.).

3

"[DEFENSE COUNSEL]: Yes, sir."

The matter was submitted. The court revoked defendant's probation in the corporal injury case, and sentenced defendant to state prison for five years eight months calculated as the prosecutor had proposed. The court imposed various fines and fees, including a $1,440 restitution fine pursuant to section 1202.4, subdivision (b) ($960 in the corporal injury case and $480 in the drug case), a $120 court security fee, a $90 criminal conviction assessment, a $50 criminal laboratory analysis fine plus a $155 penalty assessment, and a $150 drug program fine plus a $465 penalty assessment.

Defendant filed a timely notice of appeal.

## DISCUSSION

**I. The Plea Agreement**

Defendant contends the trial court erred when it restructured his sentence and sentenced him to state prison, rather than to county jail. The Attorney General initially argues defendant is barred from making this challenge because he failed to obtain a certificate of probable cause. However, defendant is not attacking the plea he entered but is challenging the sentence subsequently imposed as not in conformity with the plea agreement. No certificate of probable cause is necessary to make such a challenge. (*People v. Brown* (2010) 181 Cal.App.4th 356, 360.)

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled. [Citation.]" (*People v. Walker* (1991) 54 Cal.3d 1013, 1024, overruled on another ground in *People v. Villalobos* (2012) 54 Cal.4th 177, 183.) "This does not mean that *any* deviation from the terms of the agreement is constitutionally impermissible." (*Ibid.*) "[T]he variance must be 'significant' in the context of the plea bargain as a whole to violate the defendant's rights." (*Ibid.*)

Here, nothing indicates that defendant's plea rested to *any significant degree* on how the term of the sentence was calculated or whether it would be served in state prison or county jail. The record indicates that the length of the five-year eight-month sentence, and the dismissal of numerous counts and prison priors was the material inducement for

4

entry of the plea. When the plea was entered, defendant faced a potential six-year term in the corporal injury case (upper term of four years plus two 1-year enhancements), plus whatever terms might be imposed on the eight counts that were charged in the drug case. The probation officer recommended a prison sentence of seven years four months. When the issue of restructuring defendant's sentence arose at the sentencing hearing, although defense counsel stated that she did not recall any previous discussions about local jail, she also advised the court that she understood the need to impose a prison term as opposed to county jail.[5] She further stated that defendant was "of the understanding and in agreement with the state prison case" as long as the sentence remained five years eight months. Defendant made no objection. When the court asked defendant if he understood that the state prison sentence could result in postrelease community supervision, defendant responded, "Yes, sir." Moreover, defendant's declaration filed in support of his habeas corpus petition states only that he "understood that my principal term would be the drug case and the subordinate would consist of the domestic abuse violation of probation." Although he states that "[s]ince being sent to prison" he has encountered "considerable problems" that he presumably would not have encountered with the original sentence structure, including ineligibility for family visits and early release and "a hard time qualifying for vocational training," he makes no claim that the sentence structure or placement in county jail was a significant factor in his acceptance of the plea agreement. There is no indication in defendant's declaration or elsewhere in the record that these matters were even discussed, much less promised, as an inducement to enter his plea. Thus, in imposing the five-year eight-month prison sentence to which defendant acquiesced when imposed, the court maintained the material provisions of the plea agreement, the agreed length of the term, and dismissal of the remaining charges.

---

[5] Section 1170.1, subdivision (a) provides that "[w]henever a court imposes a term of imprisonment in state prison, whether the term is a principal or subordinate term, the aggregate term shall be served in the state prison, regardless as to whether or not one of the terms specifies imprisonment in a county jail pursuant to subdivision (h) of Section 1170."

5

**II. Writ of Habeas Corpus**

Defendant's habeas corpus petition claims that his trial counsel rendered ineffective assistance with regard to the plea negotiations "by allowing a seriously detrimental restructuring of the plea terms" without his "explicit and knowing consent," and, as a result, he was not afforded the benefit of his plea bargain. To demonstrate ineffective assistance, defendant must establish that his counsel "failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates" (*People v. Pope* (1979) 23 Cal.3d 412, 425, disapproved on a different ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10, overruled on another gound in *People v Hill* (1998) 17 Cal.4th 800, 823, fn. 1), and that his attorney's acts or omission caused him prejudice (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 691–692). Defendant has shown neither deficient performance nor prejudice.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*In re Jones* (1996) 13 Cal.4th 552, 561.) Even assuming that confining defendant in state prison rather county jail presents some disadvantages that defendant may not have anticipated, there is no showing or reason to conclude that counsel's failure to discuss with defendant the differences between prison and jail incarceration fell below the standards of acceptable professional conduct.[6] There is no suggestion that his attorney was mistaken in agreeing with the prosecutor that the five-year eight-month sentence was required to be served in prison rather than a county jail. Defense counsel understood that her client was "in agreement with the state prison case as long as" the court followed the agreed upon five-year eight-month term; and, as indicated above, defendant said nothing at the time to question that understanding. Unlike an attorney's "quintessential duty" to inform a client whether the plea carries a risk of deportation (*Padilla v. Kentucky* (2010) 559 U.S. 356, 371), to which defendant refers, no

---

[6] Defendant suggests that his trial counsel "appears to be not registered with the State Bar [of California], at least according to the Bar's website," and that we "may take judicial notice" of this fact. We decline defendant's invitation as trial counsel's registration and contact information can easily be found both on the state bar website and in the record.

6

authority suggests that counsel must describe all the conditions of confinement before counseling a client to enter a plea to a criminal charge.

In any case, there is no showing of prejudice. Although defendant's declaration claims that had he known about the supposed "complications" of prison confinement, he "would have insisted that [his] attorney get [his] plea withdrawn or that she and the prosecutor work out a satisfactory resolution," he does not show that a better outcome would have resulted if his attorney had advised him of these potential "complications." As there is no question that a prison sentence was required, there is no reason to assume the court would have permitted defendant to withdraw his plea upon his discovery of this immaterial departure from what was described when the plea was accepted. And defendant suggests no other possible disposition that would have preserved the five-year eight-month cap that defendant was principally concerned with obtaining; thus, defendant's ineffective assistance of counsel claim fails.

### III. Fines and Assessments

#### A. Restitution Fine

Defendant challenges the $1,440 restitution fine imposed pursuant to section 1202.4, subdivision (b). Subdivision (b)(1) provides that a "restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense," but "shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eight dollars ($280) starting on January 1, 2013, . . . and not more than ten thousand dollars ($10,000)," "if the person is convicted of a felony."

Defendant alleges that the amount fixed was "uncertain and confusing." He suggests that the trial court may have improperly relied on the current statutorily mandated minimum amount rather than the minimum that applied at the time of his 2012 corporal injury offense. He states, "it is impossible to know whether the court exercised its discretion along the lines of the current version [of the statute] or something different." However, as defendant acknowledges, the restitution fine imposed could "be imposed on the terms of his plea bargain." We presume the trial court properly performed its official functions in the absence of evidence to the contrary. (Evid. Code, § 664; *Ross*

7

*v. Superior Court* (1977) 19 Cal.3d 899, 913.) The record contains no such evidence to the contrary.

Defendant also argues the trial court erred in failing to determine his ability to pay the restitution fine. While defendant was entitled to have the court determine his ability to pay, he forfeited that right by failing to object at the sentencing hearing. (*People v. Nelson* (2011) 51 Cal.4th 198, 227; *People v. Gamache* (2010) 48 Cal.4th 347, 409 [the defendant forfeited claim that trial court failed to consider ability to pay in imposition of restitution fine]; *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1469 [defendant's failure to object to restitution fine constitutes waiver in the interests of fairness to sentencing court, opposing party, judicial economy, and the needs for orderly and efficient administration of law].)

**B. Laboratory and Drug Program Fees**

Defendant challenges the laboratory and drug program fees imposed pursuant to Health and Safety Code sections 11372.5, subdivision (a) and 11372.7, subdivision (a), respectively. He again argues the court erred in failing to consider his ability to pay, but he also forfeited this claim by failing to object at sentencing. (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517 [analyzing Health & Saf. Code, § 11372.7, subd. (b), and concluding challenge to court's order forfeited because "factual issues come into play in determining whether a defendant has the ability to pay a drug program fee"]; accord, *People v. McCullough* (2013) 56 Cal.4th 589, 597 (*McCullough*).) The criminal laboratory analysis fee, moreover, is mandatory and the court is not obligated to make an ability to pay determination. (*People v. Staley* (1992) 10 Cal.App.4th 782, 784-785 [the defendant's contention that trial court erred in imposing laboratory fees was meritless because statute does not require finding of ability to pay].)

Defendant refers us to *People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1399, for the proposition that claims based on insufficiency of evidence do not require assertion in the court below to be preserved on appeal. However, *Pacheco* was largely disapproved in *McCullough, supra,* 56 Cal.4th at page 599. In *McCullough*, the defendant challenged a $270.17 booking fee for insufficient evidence about his ability to pay. (*Id*. at p. 590.) He

8

argued the booking fee orders result from the application of " 'an objective legal standard' " akin to orders for involuntary HIV testing under section 1202.1 and *People v. Butler* (2003) 31 Cal.4th 1119 (*Butler*). (*McCullough,* at pp. 596–597.) Our Supreme Court disagreed, holding that "because a court's imposition of a booking fee is confined to factual determinations, a defendant who fails to challenge the sufficiency of the evidence at the proceeding when the fee is imposed may not raise the challenge on appeal." (*Id.* at p. 597.) Likewise, defendant's ability to pay both the laboratory and drug program fees imposed here presents a question of fact forfeited absent a contemporaneous objection. As the *McCullough* court explained, a defendant "may not 'transform . . . a factual claim into a legal one by asserting the record's deficiency as a legal error.' [Citation] By 'failing to object on the basis of his [ability] to pay,' [a] defendant forfeits both his [or her] claim of factual error and the dependent claim challenging 'the adequacy of the record on that point.' [Citations.]" (*Ibid.*)

Discussing *Butler*, the *McCullough* court distinguished between forfeiture as to a "de minimis" booking fee (*McCullough, supra,* 56 Cal.4th at p. 599) and a situation which entails "constitutional concerns" (*id*. at pp. 595–596). *Butler* considered whether a defendant could appeal involuntary HIV testing orders that had not been contemporaneously challenged. The court held that "a defendant may challenge the sufficiency of the evidence" to support imposition of an involuntary HIV testing order "even in the absence of an objection." (*Butler, supra,* 31 Cal.4th at p. 1123.) The *McCullough* court explained that " '[o]ur conclusion in [*Butler*] is controlled not only by the specific terms of . . . section 1202.1, but also by the general mandate that involuntary HIV testing is strictly limited by statute.' [Citation.]" (*McCullough*, at p. 590.) Here, no similar statutory or constitutional concerns exist. Accordingly, defendant has forfeited the right to appeal the laboratory and drug fee orders on the ground that there was insufficient evidence of his ability to pay.

Defendant next argues the trial court erred when it failed to itemize the penalty assessments imposed. However, the trial court's October 28, 2013 "Criminal Minutes" itemize the fees and penalty assessments as follows: "Lab Fee of: $50 plus a penalty

9

assessment of $155 is imposed per [Health and Safety Code section] 11372.5" and a "Drug Program Fee of: $150 plus a penalty assessment of $465 is imposed per [Health and Safety Code section] 11372.7." These amounts were recommended by the probation officer in his report. Defendant's only complaint in this regard is that the court failed to specify the statutory bases for the components of the penalty assessments. However, the trial court need not recite the amount and statutory basis for each separate assessment. (See *People v. Voit* (2011) 200 Cal.App.4th 1353, 1373 ["We conclude that the trial court adequately pronounced judgment by imposing a specific fine and generally referring to the applicable penalty assessments."]; see also *People v. Sharret* (2011) 191 Cal.App.4th 859, 864 (*Sharret*) [approving pronouncement of a laboratory fee and a drug program fee " '*plus penalty assessment*' "].)

Defendant directs our attention to *People v. High* (2004) 119 Cal.App.4th 1192 and *People v. Hamed* (2013) 221 Cal.App.4th 928. Neither of these cases requires a different result. In *High*, the trial court failed to articulate the amounts that represented statutorily allowable fees as distinguished from penalties. The court provided only a total sum for the " 'fee, together with surcharges and penalties,' " thus impeding collection efforts of state and local agencies. (119 Cal.App.4th at p. 1200.) In *Hamed*, the court found the penalty assessments were inaccurate. (221 Cal.App.4th at p. 940.) Here, defendant does not contend that the assessments were unauthorized or miscalculated,[7]

---

[7] As the Attorney General stated in its respondent's brief:

"[T]he statutorily mandated penalty assessments triggered by the $50 laboratory analysis fee were as follows: "(1) $50 for state penalty assessment ([Pen. Code,] § 1464, subd. (a)(1)); (2) $10 for the state surcharge ([*id*.], § 1465.7); (3) $25 for the state courthouse construction penalty (Gov. Code, § 70372); (4) $35 additional penalty ([*id*.], § 76000, subd. (a)(1)); (5) $10 for emergency medical services ([*id*.], § 76000.5, subd. (a)(1)); (6) $5 for the DNA fingerprint penalty ([*id*.], § 76104.6, subd. (a)(1)); and (7) $20 for the forensic laboratories penalty ([*id*.], § 76104.7). Thus, in addition to the $50 laboratory analysis fee, the court properly imposed the additional $155 in assessments. (See [*Sharret*, *supra*,] 191 Cal.App.4th [at pp.] 863-864 [applying these penalty assessments to a lab analysis fee].)

"Similarly, the statutorily mandated penalty assessments triggered by the drug program fee was accurately calculated and included the following: (1) $150 for state penalty

10

and the trial court was not required to itemize those amounts. (See *Sharret*, *supra*, 191 Cal.App.4th at 864.)

Defendant does correctly contend, and the Attorney General agrees, that the abstract of judgment incorrectly appends the laboratory and drug program fees to the corporal injury conviction. We agree the abstract of judgment must be amended to reflect that these fees attach to the drug case. "Courts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction of cases have ordered correction of abstracts of judgment that did not accurately reflect the oral judgments of sentencing courts. [Citations.]" (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## DISPOSITION

The trial court is directed to modify the abstract of judgment to reflect that the laboratory and drug program fees attach to defendant's conviction in the drug case. The judgment is affirmed in all other respects and the petition for writ of habeas corpus is denied.

---

assessment (Pen. Code, § 1464, subd. (a)(1)); (2) $30 for the state surcharge ([*id*.], § 1465.7); (3) $75 for the state courthouse construction penalty (Gov. Code, § 70372); (4) $105 additional penalty ([*id*.], § 76000, subd. (a)(1)); (5) $30 for emergency medical services ([*id*.], § 76000.5, subd. (a)(1)); (6) $15 for the DNA fingerprint penalty ([*id*.], § 76104.6, subd. (a)(1)); and (7) $60 for the forensic laboratories penalty ([*id*.], § 76104.7). Thus, in addition to the $150 drug program fee, the court properly imposed $465 in assessments. (See [*Sharret*], *supra,* 191 Cal.App.4th at pp. 863-864 [applying these penalty assessments to a drug program fee].)"

Defendant does not dispute these calculations, but claims that "nothing in the record indicates . . . the judge calculated [the penalty assessments] in the same manner." Absent evidence to the contrary, however, we presume the trial court properly performed its official functions. (Evid. Code, § 664; *Ross v. Superior Court, supra,* 19 Cal.3d at p. 913.)

11

_____

Pollak, J.

We concur:


_____

McGuiness, P. J.


_____

Siggins, J.