Filed 7/15/16  P. v. Savellano CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068798 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF35186) |
| MIGUEL ANGEL SAVELLANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Ruth Bermudez Montenegro, Judge.  Affirmed.

Comar Law and D. Inder Comar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Collette Cavalier and Britton Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal challenges the trial court's imposition of six fees, fines and costs during defendant Miguel Angel Savellano's sentencing.  This matter arose after the

Imperial County District Attorney's office charged Savellano in a felony complaint with selling or transporting marijuana (count 1: Health & Saf. Code, § 11360, subd. (a)) and possessing marijuana for sale (count 2: Health & Saf. Code, § 11359). In late July 2015, pursuant to a plea agreement, Savellano pleaded guilty to count 1 with the understanding that the imposition of sentence would be suspended, he would be placed on formal probation for three years subject to standard drug terms and a Fourth Amendment waiver, he would serve 120 days in county jail, he faced up to $10,000 in fines, and the People would move for dismissal of count 2. The parties stipulated that the facts set forth in the Calexico Police Department's report served as the factual basis for the plea. The court accepted Savellano's guilty plea and found he made a knowing, intelligent, and voluntary waiver of his constitutional rights. Pursuant to the plea agreement, the People moved to dismiss count 2, and the court granted the People's motion.

At the sentencing hearing in August 2015, the court suspended imposition of sentence, placed Savellano on formal probation for a period of three years subject to certain terms and conditions, sentenced him to 120 days in local custody, and ordered him to pay various fees, fines, and costs.

On appeal, Savellano challenges the following six fees, fines and costs: (1) a $200 administrative fee for the reasonable cost of preparing the probation report (Pen. Code,[1] § 1203.lb, subd. (a)); (2) a $560 fine (Health & Saf. Code, § 11350); (3) a $25 administrative payment-collection-and-processing fee (§ 1203.1b, subd. (h)); (4) $25 per

_____

[1]  All further statutory references are to the Penal Code unless otherwise specified.

2

month for the reasonable cost of probation supervision (§ 1203.1b, subd. (a)); (5) a $7-per-test drug testing fee (§ 1203.lab); and (6) $200 for the cost of his court-appointed counsel (§ 987.8, subds. (b), (e)).  He contends these fees, fines, and costs must be reversed because (1) "the facts underlying [his] ability to pay were not found to be true by a jury beyond a reasonable doubt, as required by the Sixth and Fourteenth Amendments to the United States Constitution," and (2) there was no substantial evidence that he has the ability to pay them.  We affirm the judgment.

## FACTUAL BACKGROUND[2]

On July 24, 2015, Border Patrol Officer M. Ponce searched Savellano at the Calexico West Port of Entry after Savellano sought entry into the United States.  Officer Ponce discovered a package on Savellano's abdominal area.  Savellano was restrained, and a further search revealed 1.29 kilograms of marijuana in the package.

Calexico Police Department Officer J. C. Ramirez met with Savellano.  Officer Ramirez asked Savellano if he knew why he was being detained.  Savellano replied, "Yeah, because of the weed."  After he was advised of his *Miranda*[3] rights, Savellano continued to speak about the incident and admitted he was going to be paid $150 to cross the border with the marijuana, and he knew he had marijuana.  Savellano was arrested and transported to the county jail.

---

[2]    Because Savellano pleaded guilty to count 1, the following summary of the facts is taken from the probation officer's report.

[3]    *Miranda v. Arizona* (1966) 384 U.S. 436.

DISCUSSION

I.  *SIXTH AMENDMENT CLAIM*

Savellano first contends the fees, fines and costs he challenges must be reversed because the court abused its discretion and violated his constitutional right to a jury under the Sixth and Fourteenth Amendments to the United States Constitution by imposing them without a jury finding that he had the financial ability to pay them.  We reject this contention.

A.  *Background*

At the sentencing hearing, the court indicated it had read the sentencing report and invited defense counsel and the prosecutor to comment.  The following colloquy then occurred in which defense counsel raised the issue of Savellano's ability to pay some of the fees, fines and costs that the Imperial County Probation Department in its probation report recommended the court order Savellano to pay:

> "[DEFENSE COUNSEL]: Your Honor, we would ask the Court to not follow the recommendations contained within the [probation] report; specifically, I'm referring to Item 23,[4] page 1, line 1.  In review of Health and Safety Code Section 11350, the Court can only order that fine if it finds . . . there is an *ability to pay*, otherwise the Court is allowed under that section to convert it to community work service.  [¶] In this particular case, the only information contained within the probation report is that [Savellano] supports himself and his wife, and that he is a field worker.  *He does not have the ability*,

---

4     Item No. 23 of the recommendation section of the probation report stated:  "IT IS FURTHER RECOMMENDED that [Savellano] be ordered to pay a penalty and surcharge fee in the amount of $560.00 in accordance to Section 11350[] of the California Health and Safety Code."

4

in addition to the $300 State Restitution Fine Fund[5] and other mandated fines, *to pay that additional fine*. [¶] We would ask the Court to convert it to community work service. [¶] We would ask the Court, *on those same grounds*, to waive the preparation of the [probation] report fee for $200 on page 10, Recommendation Number 22.[6] [¶] Waive the fees for the services of the Public Defender, Number 21.[7] [¶] I believe that Number 20[8] is required by law. [¶] We ask the Court to waive Number 19[9] and Number 18,[10] as *there is no evidence contained within the report that there is an ability to pay*. [¶] On any other terms and conditions, we would submit.

"[PROSECUTOR]: The People submit to the Court on fines and fees.

---

5      Item No. 24 stated: "IT IS FURTHER RECOMMENDED that [Savellano] pay a restitution fine in the amount of $300.00 to the State Restitution Fine Fund, payable through the Probation Department, pursuant to the Provisions of Section 1202.4[, subdivision] (b)."

6      Item No. 22 stated: "IT IS FURTHER RECOMMENDED that [Savellano] be ordered to pay an administrative fee in the amount of $200.00 for the preparation of this report, pursuant to County Ordinance 2.84.040 and [section] 1203.1b[, subdivision (a)]."

7      Item No. 21 stated: "IT IS FURTHER RECOMMENDED that [Savellano] be found to have the ability to pay for the services of his court-appointed attorney, and that an appropriate amount be set at $200.00."

8      Item No. 20 stated: "Pursuant to [section 1465.8, subdivision (a)(1)], [Savellano] shall pay a Court Operations Fee in the amount of [$40]."

9      Item No. 19 stated: "IT IS FURTHER RECOMMENDED that [Savellano] be ordered to pay for the reasonable costs of probation supervision in the amount of $25.00 per month, pursuant to County Ordinance 2.84.020 and [section] 1203.1b[, subdivision (a)]."

10      Item No. 18 stated: "IT IS FURTHER RECOMMENDED that [Savellano] be ordered to pay an administrative collection processing fee in the amount of $25.00, pursuant to County Ordinance 2.84.050 and [section] 1203.1b[, subdivision (h)]."

5

"THE COURT: All right. Very good. [Savellano] will be placed on three years formal probation. [¶] Imposition of sentence is suspended. [¶] He is subject to the following terms and conditions: [¶] He is ordered to serve 120 days in the Imperial County Jail. . . ." (Italics added.)

After the court imposed numerous other terms and conditions of probation, it ordered Savellano to pay (1) an Immediate Critical Needs Assessment criminal conviction fee in the amount of $30 (Gov. Code, § 70373, subd. (a)(l)), (2) a drug testing fee in the amount of $7 per test (§ 1203.1ab; County Ordinance No. 2.84.060), and (3) an administrative collection processing fee in the amount of $25 (§ 1203.1b, subd. (h); County Ordinance No. 2.84.050).

Defense counsel then interrupted the court to discuss whether there was evidence of Savellano's ability to pay, and the following exchange occurred:

"[DEFENSE COUNSEL]: Your Honor, pursuant to the statute, can the Court state the grounds as to where she is finding the evidence o[f] an ability to pay?

"[PROSECUTOR]: Your Honor, I believe the only thing that the Court has to cite to is if the Court is actually striking an inability to pay.

"[DEFENSE COUNSEL]: Actually, I think the law is contrary. The Court has to find an ability to pay at the time of sentencing in order to justify the amount.

"THE COURT: As the probation report indicates, I believe they refer to his financial condition as 'fair.' I find that he is able-bodied, he is able to work. He says he has income from his farm labor work as well as his wife's assistance.

"[DEFENSE COUNSEL]: I don't think that there is any evidence that is contained within the report that states anything in regards to hers. I think the Court can take judicial notice that field workers in Imperial County are not paid all that well, although he does have

6

minimum income from that job and he's about to serve out another—what did we say?—70 days in custody, therefore having no income at all during that period of time.

"THE COURT: Your comments are noted."

The court then ordered Savellano to pay all of the remaining fees, fines, and costs recommended by the probation department as outlined in the probation report. Specifically, the court ordered Savellano to pay the following additional fees, fines, and costs: (1) $25 per month for the reasonable cost of probation supervision (§ 1203.1b, subd. (a)), (2) a $40 court operations fee (§ 1465.8, subd. (a)(l)), (3) $200 for the cost of his court-appointed attorney's services, (4) a $200 administrative fee for the preparation of the probation report (County Ordinance No. 2.84.040; § 1203.lb, subd. (a)), (5) a $560 penalty surcharge fee (Health & Saf. Code, § 11350), (6) a $300 restitution fine (§ 1202,4, subd. (b)), and (7) a $300 probation revocation restitution fine (§ 1202.44).

B. *Analysis*

Citing *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and *Southern Union Co. v. United States* (2012) __ U.S. __ [132 S.Ct. 2344] (*Southern Union*), Savellano asserts the fees, fines and costs he challenges "must be reversed because the facts underlying [his] ability to pay were not found to be true by a jury beyond a reasonable doubt, as required by the Sixth and Fourteenth Amendments to the United States Constitution."[11] He also asserts that he "[pleaded] guilty to Count 1 of his information, but he did not otherwise plead or admit to his financial condition"; the jury

---

[11] Savellano does not contest the *amounts* of the fees, fines and costs he challenges.

7

made no finding about his financial condition; and, thus, the court imposed the fees, fines and costs "violating his Sixth Amendment right to a jury" because the court, not a jury, made the determination he had the financial ability to pay the fees, fines and costs. These assertions are unavailing.

We begin by noting that the Attorney General claims Savellano forfeited the right to challenge on appeal the fees, fines and costs at issue here because he did not object to them at sentencing. Savellano claims the forfeiture rule does not apply. Even if we were to assume forfeiture, we retain the discretion to review forfeited challenges. (*People v. McCullough* (2013) 56 Cal.4th 589, 593 (*McCullough*) [appellate courts may "refrain from applying the forfeiture bar"], citing *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [appellate courts have discretion to review otherwise forfeited challenges].) We reach the merits of Savellano's challenges.

In *Apprendi*, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.) In *Blakely v. Washington* (2004) 542 U.S. 296, the Supreme Court explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." (*Blakely*, at p. 303.) "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional

8

findings." (*Id*. at pp. 303-304.) Thus, a court may not "inflict[] punishment that the jury's verdict alone does not allow." (*Id*. at p. 304.)

In *Southern Union*, the Supreme Court also held that "the rule of *Apprendi* applies to the imposition of criminal fines." (*Southern Union*, *supra*, 132 S.Ct. at p. 2357.) However, as the *Apprendi* court explained, "nothing in [the common law and constitutional history] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (*Apprendi*, *supra*, 530 U.S. at p. 481.)

Here, the court was statutorily authorized not only to impose all six of the challenged fees, fines and costs based on Savellano's guilty plea and his resulting conviction of count 1, but also to determine whether Savellano had the financial ability to pay them. Specifically, the court ordered Savellano to pay $200 for the preparation of the probation report pursuant to section 1203.lb, subdivision (a). This statute authorizes a court to order a convicted defendant to pay all or a portion of the reasonable cost of conducting any presentence investigation and preparing any presentence report, and it also provides "the *court* shall make a determination of the defendant's ability to pay and the payment amount." (*Ibid.*, italics added.) Thus, here, the court was statutorily authorized to determine whether Savellano had the financial ability to pay $200 for the preparation of the probation report.

The court also ordered Savellano to pay what the court referred to as a "penalty and surcharge fee" in the amount of $560 pursuant to Health and Safety Code section

9

11350. This statute authorizes a court to impose "a fee for the processing of payments made in installments to the probation department pursuant to this section," but provides the amount of the fee "shall not exceed [$75]." (*Ibid*.)

The court also ordered Savellano to pay $25 per month for the reasonable cost of probation supervision pursuant to section 1203.lb, subdivision (a). This statute authorizes "the court" to order a defendant who has been convicted of any specified drug offenses, and who "has the financial ability" to pay, a "reasonable fee" for all or part of the costs associated with substance abuse testing. (*Ibid*.). Thus, the court was statutorily authorized to determine whether Savellano had the financial ability to pay the $7-per-test cost of any substance abuse testing recommended by Savellano's probation officer.

Finally, the court ordered Savellano to pay $200 for the services of his court-appointed attorney. Section 987.8 authorizes a court to order a defendant to pay all or a portion of the reasonable cost of a public defender's legal assistance. (§ 987.8, subds. (b), (e)(5)). Subdivision (b) of section 987.8 provides in part that "[t]he *court* may . . . make a determination of the present ability of the defendant to pay all or a portion of the cost thereof" (italics added). Subdivision (e) of section 987.8 provides that "[i]f the court determines that the defendant has the present ability to pay all or a part of the cost, the court shall set the amount to be reimbursed and order the defendant to pay the sum to the county in the manner in which the court believes reasonable and compatible with the defendant's financial ability." Thus, the court was statutorily authorized to determine whether Savellano had the financial ability to pay $200 for the services of his court-appointed attorney.

10

As is evident, none of the foregoing statutes provides or even suggests that the determination of whether the defendant has the financial ability to pay these fees, fines and costs should be submitted to a jury and proved beyond a reasonable doubt.

Savellano's claim that the court's imposition of the foregoing fees, fines and costs without a jury's determination of his ability to pay them violated his Sixth Amendment right to jury is necessarily premised on (1) his contention that the *Apprendi* rule applies, and thus on (2) the implied contention that the court's factual determination that he had the financial ability to pay them unlawfully increased the penalty for his crime beyond the prescribed statutory maximum such that the determination should have been be submitted to a jury and proved beyond a reasonable doubt. (See *Apprendi*, *supra*, 530 U.S. at p. 490.)

We conclude the court's factual determination that Savellano had the financial ability to pay the challenged fees, fines and costs did not unlawfully increase the penalty for his crime beyond the prescribed statutory maximum, and thus the rule in *Apprendi*, *supra*, 530 U.S. at page 490, does not apply. As Savellano acknowledged both when he signed and initialed the guilty plea form and when he pleaded guilty to count 1 at the change of plea hearing, the maximum punishment he could receive as a result of his plea included (among other things) four years in prison and up to $10,000 in what the court referred to as "fines," which reasonably encompassed the various fees, fines and costs it later imposed, including those challenged here. The total amount of the six fees, costs, and fines Savellano challenges are well within the prescribed limits set both by his plea agreement and by the statutory provisions (discussed, *ante*) under which the court

11

imposed them. (See Pen. Code, §§ 987.8, subds. (b) & (e)(5), 1203.lab, 1203.1b, subds. (a) & (h); Health & Saf. Code, § 11350, subd. (d)(l).) Specifically, based on Savellano's conviction and the court's statutorily authorized determination that Savellano had the financial ability to pay, the court ordered him to pay a total of $985 plus $25 per month for the reasonable cost of probation supervision and a drug test fee of $7 per test.[12] The rule in *Apprendi* does not apply because the court's imposition of the challenged fees, fines and costs did not unlawfully "increase[] the penalty for [his] crime beyond the prescribed statutory maximum" (*Apprendi*, *supra*, 530 U.S. at p. 490).

Savellano's reliance on *Southern Union*, *supra*, 132 S.Ct. 2344 is misplaced. As noted, *Southern Union* held that "the rule of *Apprendi* applies to the imposition of criminal fines." (*Id*. at p. 2357.) However, *Southern Union* did not hold that the *Apprendi* rule applies to the imposition of any and all criminal fines. In that case, a jury convicted the defendant of one count of knowingly storing liquid mercury without a permit in violation of the Resource Conservation and Recovery Act of 1976 (RCRA). (*Southern Union*, at p. 2349.) The indictment charged, and the jury's verdict showed that the jury found, that the defendant violated the RCRA from "'on or about September 19, 2002 until on or about October 19, 2004.'" (*Ibid.*) The statutory maximum fine was $50,000 for each day the defendant violated the RCRA, and the court's jury instructions

---

[12]    In the interest of clarity, we reiterate that Savellano challenges the court's imposition of (1) a $200 administrative fee for the reasonable cost of preparing the probation report; (2) a $560 fine; (3) a $25 administrative payment-collection-and-processing fee; (4) $200 for the cost of his court-appointed counsel; (5) $25 per month for the reasonable cost of probation supervision; and (6) a $7-per-test drug testing fee.

permitted a conviction if the jury found even a one-day violation. (*Ibid.*) The trial court concluded from the content and context of the verdict that the jury found a 762-day violation and, at sentencing, it set a maximum potential fine of $38.1 million, from which it imposed a fine of $6 million and a "'community service obligatio[n]'" of $12 million. (*Ibid.*)

In *Southern Union*, the Supreme Court reversed the judgment, concluding that the trial court's factual findings with respect to the number of days the defendant violated the RCRA, which increased both the potential and actual fine the court imposed, violated *Apprendi* because it enlarged the maximum punishment beyond what the jury's verdict allowed. (*Southern Union*, *supra*, 132 S.Ct. at pp. 2352, 2357.) However, a critical factor in the Supreme Court's analysis was the "*significance of the fine* from the perspective of the Sixth Amendment's jury trial guarantee." (*Id.* at p. 2352, italics added.) The high court explained that "[w]here a fine is so insubstantial that the underlying offense is considered 'petty,' the Sixth Amendment right of jury trial is not triggered, and no *Apprendi* issue arises." (*Southern Union*, at p. 2351, citing *Muniz v. Hoffman* (1975) 422 U.S. 454, 477 [$10,000 fine imposed on labor union does not entitle union to jury trial]. The Supreme Court held that, "[w]here a fine is *substantial enough* to trigger [the Sixth Amendment right to a jury trial], *Apprendi* applies in full." (*Southern Union*, at p. 2352.) Thus, stated differently, *Southern Union* holds that the rule in *Apprendi* does not apply where a criminal fine is not substantial enough to trigger the Sixth Amendment right to a jury trial. (*Southern Union*, at p. 2352.)

13

Here, Savellano's admitted crime of selling or transporting marijuana resulted in a significant expenditure of judicial, prosecutorial, public defender, and probation department resources. The fees, fines and costs Savellano challenges on appeal—a total of $985 plus $25 per month for the reasonable cost of probation supervision and a drug test fee of $7 per test—are not substantial enough to trigger the Sixth Amendment right to a jury trial on the issue of whether Savellano has the financial ability to pay them. Thus, we conclude the *Apprendi* rule does not apply and the court did not abuse its discretion or commit constitutional error in determining that Savellano has the ability to pay the challenged fees, fines and costs. (See *Southern Union*, *supra*, 132 S.Ct. at pp. 2351-2352.)

## II. *SUFFICIENCY OF THE EVIDENCE*

Savellano also contends the six challenged fines, fees and costs must be reversed because "they are unsupported by substantial evidence" of his financial ability to pay them. We reject this contention.

### A. *Applicable Legal Principles*

"Practically speaking, determining a defendant's ability to pay a fee is much less complex than is determining a defendant's sentence." (*McCullough*, *supra*, 56 Cal.4th at p. 599.) A trial court's finding of a defendant's ability to pay may be implied, and it will be upheld on appeal if supported by substantial evidence. (*People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1398, disapproved on another ground in *McCullough*, *supra*, 56 Cal.4th at p. 599 & *People v. Trujillo* (2015) 60 Cal.4th 850, 858, fn. 5.)

14

Substantial evidence is evidence sufficient to deserve consideration by the trier of fact, that is, evidence that a reasonable trier of fact "could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.) Under the deferential substantial evidence standard of review, we must view the evidence in the light most favorable to the judgment below, and we must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) Resolution of evidentiary conflicts is "the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

B. *Analysis*

The court implicitly determined that Savellano had the financial ability to pay the various fees, fines and costs the court ordered him to pay. Noting that the probation report indicated Savellano's financial condition was "fair," the court stated, "I find that [Savellano] is able-bodied, he is able to work." The court added, "He says he has income from his farm labor as well as his wife's assistance."

The court's finding that Savellano has the financial ability to pay the challenged fees, fines and costs is supported by substantial evidence. Savellano was interviewed by a deputy probation officer prior to the sentencing hearing on August 28, 2015. The probation officer's report shows that, at the time of sentencing, Savellano was 34 years of age, a United States citizen, and a high school graduate who had been attending the University of Phoenix. The probation report also shows Savellano was employed as a

15

farm worker, he "receiv[ed] support from employment and his wife," and he is a military veteran who served in the United States Army with the rank of Specialist E4. In addition, the probation report states that Savellano's "financial condition is fair due to his income from farm labor and his wife's assistance," he "made no indication of any medical or psychological issues," and he stated he was in "good health" and he "[did] not use any drugs but does occasionally consume alcohol." According to the bail review filed by the probation department on July 30, 2015, Savellano was residing at his mother's residence, and prior to his incarceration he was employed full time and earned $350 per week.

"Ability to pay does not necessarily require existing employment or cash on hand." (*People v. Staley* (1992) 10 Cal.App.4th 782, 785.) The foregoing undisputed facts set forth in the probation report constitute substantial evidence that Savellano has the ability to pay the challenged fees, fines and costs.

Savellano relies on *People v. Verduzco* (2012) 210 Cal.App.4th 1406, in which the Court of Appeal stated, "While the statutory language does not mandate an express finding of an ability to pay, the statute contains a presumption that those sentenced to *prison* do not have the ability to pay." (*Id*. at p. 1421, italics added.) Savellano's reliance on *Verduzco* is misplaced because, here, the court did not sentence him to a state prison term; it sentenced him to 120 days in the county jail.

For all of the foregoing reasons, we affirm the judgment.

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.